2006 ND 62

**STATE of North Dakota, Plaintiff and Appellee**

v.

**William J. MORAN, Defendant and Appellant.**

No. 20050244.

Supreme Court of North Dakota.

March 29, 2006.

Michael R. Hoffman, Bismarck, N.D., for defendant and appellant.

Julie Ann Lawyer, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

SANDSTROM, Justice.

[¶ 1] William Moran appeals his jury conviction for driving under the influence of an intoxicating liquor ("DUI"). He argues the district court should have dismissed the charge because his right to a speedy trial was violated and the conviction should be reversed because the State's closing argument contained improper statements. Holding that Moran's speedy trial rights have not been violated and the State's closing argument did not contain obvious errors, we affirm.

I

[¶ 2] Moran was cited for DUI in May 1996. He was ordered to appear in municipal court. He did not appear, and a bench warrant was issued for his arrest. The municipal court dismissed the case in

August 1996, and the case was referred to the Burleigh County State's Attorney for prosecution. On October 1, 1996, the State filed a criminal complaint against Moran in state district court, and a warrant for his arrest was issued eight days later.

[¶ 3] On October 8, 1999, the warrant was served on Moran. He signed a promise to appear in court on October 19, 1999. That appearance was changed to October 26. He did not appear on October 26, and his court appearance was rescheduled for November 9. When he failed to appear in November, a bench warrant was issued for his arrest.

[¶ 4] Moran was not arrested until February 2005. Moran moved to dismiss the case under N.D.R.Crim.P. 48(b), article I, section 12 of the North Dakota Constitution, and the Sixth Amendment of the United States Constitution, claiming he was not afforded his right to a speedy trial. His motion was denied. In July 2005, he was tried before a jury and found guilty of DUI.

[¶ 5] On appeal, Moran argues that he was not afforded his right to a speedy trial and that the State's closing argument contained improper statements. The State argues the delay in prosecution was caused by Moran's evasion of law enforcement and its closing argument was proper.

[¶ 6] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29–28–06.

## II

[¶ 7] Moran argues the delay between October 1, 1996, when the criminal complaint was filed, and October 8, 1999, when the warrant was served, violated his right to a speedy trial. He concedes the delay from October 8, 1999, until trial in 2005 was attributable to him and cannot support a speedy trial claim.

[¶ 8] The right to a speedy trial is guaranteed in the Sixth Amendment of the United States Constitution and article 1, section 12 of the North Dakota Constitution. In *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court developed a four factor test to decide whether a defendant's right to a speedy trial has been violated: (1) the length of the delay, (2) the reason for the delay, (3) the accused's assertion of his right to a speedy trial, and (4) the prejudice to the accused. *State v. Bergstrom,* 2004 ND 48, ¶ 15, 676 N.W.2d 83. No single factor is controlling, and all factors must be weighed. *Id.* (quoting *Barker,* at 533, 92 S.Ct. 2182). For speedy trial issues, appellate courts review the district court's decision de novo, with the district court's findings of fact reviewed under a clearly erroneous standard of review. *See State v. Cham,* 680 N.W.2d 121, 124 (Minn.Ct.App.2004) ("Because appellate courts review constitutional questions de novo and Cham's claim raises a constitutional question, we conclude that the district court's speedy trial determination is subject to de novo review."); *United States v. Cardona,* 302 F.3d 494, 497 (5th Cir.2002) ("We review for clear error a district court's factual findings in applying the elements of this balancing test."). Rule 48(b), N.D.R.Crim. P., grants the district court authority to dismiss a criminal case when there has been unnecessary delay:

If there is unnecessary delay in presenting the charge to a grand jury or in

filing an information or complaint against a defendant who has been arrested or for whose arrest a warrant has been issued, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information, or complaint.

N.D.R.Crim.P. 48(b) (N.D.R.Crim.P.48(b) was amended on March 1, 2006).

■■■ [¶ 9] The length of the delay is a triggering factor. *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). If the delay is longer than the delay usually allowed for criminal prosecutions, the delay is "presumptively prejudicial," and a court must complete a speedy-trial analysis. *Id.* Traditionally, a delay of one year or more is considered presumptively prejudicial, triggering the analysis. *See United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir.2003) (citing *Doggett*, at 652 n. 1, 112 S.Ct. 2686; *United States v. Walker*, 92 F.3d 714, 717 (8th Cir.1996)). A presumptively prejudicial delay alone does not create a speedy-trial violation, and the other factors must still be weighed. *Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182. The delay Moran complains of was just over three years. The total delay was approximately nine years. The State concedes the delay is well past the presumptively-prejudicial point, requiring analysis of the other *Barker* factors.

■■■ [¶ 10] The second factor, the reason for the delay, is closely related to the first factor. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. The factor weighs against the State if the State engages in intentional or dilatory tactics that delay trial. *Id.* The factor also weighs against the State if the State is negligent by not diligently pursuing prosecution. *Id.* Delays caused

by the defendant weigh against him. *State v. Ochoa*, 2004 ND 43, ¶ 35, 675 N.W.2d 161. The government must actively try to serve a warrant, or it risks being negligent for not diligently pursuing the accused. *See Doggett*, 505 U.S. at 652–53, 112 S.Ct. 2686 (the Government's assumption that the defendant absconded from the country, rather than actively pursuing him, was negligence, weighing against the Government).

[¶ 11] The district court stated, "This Court concludes that the extensive delay involved in bringing this case to trial cannot be attributable to the State, as claimed by the defendant; that the October 1996 warrant was active demonstrated by virtue of its execution, albeit three years later." The court also stated, however, "no facts have been presented to the Court to establish efforts to serve the warrant or reasons for the delay in executing the warrant over the three year period." Although the court's analysis is ambiguous, the court apparently believed each party bore some responsibility for the total delay.

■■■ [¶ 12] On May 13, 1996, Moran failed to appear as ordered in municipal court, and a bench warrant was issued. The district court noted Moran caused this initial delay in municipal court. He knew he had been charged with DUI in municipal court, and he could not rationally believe the charge had been dismissed or otherwise disposed of without being notified by the municipal court. Therefore, the court correctly found this delay was caused by Moran.

■■■ [¶ 13] The municipal case was dismissed and referred to the Burleigh County State's Attorney. A complaint was filed and an arrest warrant issued, but the warrant was not served until October 1999.

Moran claims he knew nothing of the district court charge. The district court correctly found that the record contains no evidence of measures taken by law enforcement to serve the warrant. At the hearing for the motion to dismiss, the State argued that merely issuing the warrant shows it was diligently pursuing Moran. Under *Doggett*, however, the State's inactive approach to serve the warrant for three years constitutes negligence. 505 U.S. at 652–53, 112 S.Ct. 2686. Therefore, the State bears responsibility for the delay between October 1996 and October 1999 by not actively pursuing Moran.

[¶ 14] Finally, neither party disputes Moran caused the final delay, lasting approximately six years. The district court correctly noted when referencing the final six year delay, "There is no dispute that most of the delay in bringing the matter to trial has been brought about by the defendant's failure to respond, and, in effect, avoiding prosecution by failing to appear after posting bond or signing promises to appear." Therefore, each party shares some responsibility for the delay.

[¶ 15] The third factor is the defendant's proper assertion of his right to a speedy trial. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. 2182. When a defendant does not know of the charge against him, not asserting the right until after arrest cannot weigh against him. *Doggett*, 505 U.S. at 654, 112 S.Ct. 2686.

[¶ 16] The district court did not address this factor, so we do not know if the court considered it. Regardless, we conclude the third factor weighs against Moran. He argues he asserted his right in due course by moving to dismiss in 2005, even though he did not assert his right in 1999 when he was first arrested. He claims, and the district court agreed, he did not know of the charge against him until his arrest in 1999.. Assuming Moran did not know of the charge against him, he still did not timely assert his right to a speedy trial. Rather than asserting his right in 1999 when he first could have, he evaded law enforcement for more than five years. As noted in *Barker*, Moran's failure to assert his right makes it difficult to prove he was denied a speedy trial. 407 U.S. at 532, 92 S.Ct. 2182. Therefore, Moran failed to properly assert his right to a speedy trial, choosing to elude law enforcement instead.

[¶ 17] The final factor, prejudice to the defendant, has three interests it seeks to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. The last is the most important. *Id.* Because great delays make a defendant's showing of prejudice more difficult to make, the defendant does not always have to affirmatively prove how his case has been eroded. *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686. Moran was not incarcerated for a long period of time prior to trial, so the first interest cannot apply to him. He claims he was unaware of the charges against him, so he could not have suffered any anxiety or concern over the charge. Therefore, the second interest cannot apply to him, leaving only an impaired defense as the interest in need of protection.

[¶ 18] Moran argues that when there has been long delays, prejudice

may be conclusively presumed. *See Cardona*, 302 F.3d at 497 (" 'Depending on how heavily the first three factors weigh for or against the defendant, prejudice is presumed in some cases, relieving the defendant of any burden to show actual prejudice. One lesson from *Doggett* is that the longer the delay, the greater the presumption of prejudice.' " (quoting *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002))). *Doggett* allowed for a presumption of prejudice because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." 505 U.S. at 655, 112 S.Ct. 2686. The Court also said, "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, ... it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* at 655–56, 112 S.Ct. 2686 (citing *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986)). When the State diligently pursues the defendant, the defendant must prove actual prejudice. *See Doggett*, at 656, 112 S.Ct. 2686 ("if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense."). When the State intentionally delays prosecution because of a bad-faith motive, prejudice is presumed. *See id.* (*"Barker* stressed that official bad faith in causing delay will be weighed heavily against the government, ... and a bad-faith delay the length of this negligent one would present an overwhelming case for dismissal.") (internal citation omitted). When the State has been negligent by not diligently pursuing the defendant, such as in this case, the weight of the other factors and the length of the delay controls whether prejudice must be actual or may be presumed. *Doggett*, at 657, 112 S.Ct. 2686 (the government's failure to diligently pursue the defendant for six years caused the delay and weighed heavily in favor of presuming prejudice). Therefore, prejudice from negligent delay is not conclusive, but depends on the other factors, including the length of the delay.

▪ [¶ 19] Under the facts of this case, the first three factors do not favor a presumption of prejudice. The district court correctly concluded Moran must show actual prejudice. Although the total delay of approximately nine years was certainly sufficient to presume prejudice under *Doggett*, almost six years of that delay was caused by Moran. Furthermore, as discussed above, Moran also holds some responsibility for the delay between his 1996 citation and his 1999 arrest. Finally, he did not assert his right when he first could have in 1999. Therefore, the factors do not weigh heavily enough in Moran's favor to support a presumption of prejudice, and the district court properly found that he must prove actual prejudice.

▪ [¶ 20] "To establish actual prejudice, a defendant must 'factually link her loss of liberty with any specific prejudice to her right to a fair trial.' " *City of Fargo v. Thompson*, 520 N.W.2d 578, 580 (N.D. 1994) (quoting *City of Jamestown v. Erdelt*, 513 N.W.2d 82, 85 (N.D.1994)). "A defendant 'must show that lost evidence or testimony would have been helpful to his defense, that the evidence would have been significant, and that the evidence or testimony was lost as a result of the statutory deprivations of which he complains.' "

*Thompson,* at 580 (quoting *State v. Knoll,* 322 N.C. 535, 369 S.E.2d 558, 565 (1988)).

■ [¶ 21] The district court correctly found Moran was not prejudiced. The arresting officer, the sole prosecution witness, remembered little about the arrest and had to rely heavily on his written report to refresh his memory during trial. The district court granted Moran's motion in limine, excluding the Intoxilyzer report from evidence, because the State did not give Moran sufficient time to review the foundational documents. According to the State, the foundational documents used in 1996 are not the same as the foundational documents used today. The 1996 documents were archived at the State Crime Lab. The State did not receive and did not give Moran copies of the documents until shortly before the trial began. Because of the short time Moran had to review the documents, the court excluded the Intoxilyzer report. If anything, the delay helped Moran by keeping potentially damaging evidence out and forced the prosecution's witness to rely heavily on reports rather than memory. Moran did not call any witnesses of his own nor did he complain that he had to forgo evidence because of the delay. Moran's counsel stated the day of the trial that the only evidence he planned to present was through cross-examination of the arresting officer. Therefore, his case could not have suffered any harm a speedy trial seeks to avoid. The district court did not err when it found Moran was not prejudiced.

[¶ 22] Moran's reliance on *United States v. Cardona,* 302 F.3d 494 (5th Cir. 2002), is misplaced. In *Cardona,* the defendant was indicted, and his arrest warrant sat idle for five years. *Id.* at 496.

The record contained no evidence that the defendant knew of the charges against him until his arrest, so the second and third factor weighed in his favor. *Id.* at 498. The court in *Cardona* concluded the first three factors weighed heavily for the defendant, so a presumption of prejudice was appropriate. *Id.* at 498–99. In the present case, Moran was originally arrested and notified of when to appear. Although the record is unclear whether Moran knew of the district court charge between 1996 and his arrest in 1999, he knew of a charge against him in municipal court and he knew of the district court charge after his arrest in 1999. After his arrest, he chose to run rather than assert his right. The third factor weighs against him, and the three factors together do not weigh heavily in Moran's favor. A presumption is inappropriate.

[¶ 23] The district court did not specifically enunciate its weighing of each *Barker* factor individually. Although we are able to understand the district court's factual basis used to make its decision, we encourage an analysis of each *Barker* factor when analyzing a speedy trial claim. "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.... In sum, these factors have no talismanic qualities; courts *must* still engage in a difficult and sensitive balancing process." *Barker,* 407 U.S. at 533, 92 S.Ct. 2182 (emphasis added). Although clear weighing of each factor is preferred, the district court did not err in making its findings.

[¶ 24] We refuse Moran's invitation to reward him for successfully playing "catch me if you can" with law enforcement. Just

as a fugitive cannot order law enforcement to "stop chasing me" and expect it to comply,[1] a fugitive cannot be rewarded for successfully evading law enforcement. The district court's order denying Moran's motion to dismiss is affirmed.

## III

[¶ 25] Moran argues that the State committed obvious error by not referring to its burden of proof beyond a reasonable doubt and by asking the jury to hold Moran responsible for his actions. He claims this allowed the jury to believe the burden was less than proof beyond a reasonable doubt.

[¶ 26] "Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." N.D.R.Crim.P. 52(b). "But the power to notice obvious error, whether at the request of counsel or on the court's own motion, is one the courts should exercise cautiously and only in exceptional circumstances. The power should be exercised only where a serious injustice has been done to the defendant." N.D.R.Crim.P. 52, Explanatory Note. This Court may notice claimed error "if there was (1) error, (2) that is plain, and (3) affects substantial rights." *State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765.

[¶ 27] A trial court has discretion over closing arguments, and this Court "will not reverse on the ground the prosecutor exceeded the scope of permissible closing argument unless a clear abuse of discretion is shown." *Clark*, 2004 ND 85, ¶ 7, 678 N.W.2d 765. Unless the error was fundamental, the defendant must

prove the prosecutor's comments were improper and prejudicial. *Id.* "To be prejudicial, improper closing argument must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence." *Id.* When a defendant argues the prosecution's comments somehow affected the prosecution's burden of proof, this Court has held the trial court's instruction on proof beyond a reasonable doubt and its instruction that arguments by counsel are not evidence have minimized any prejudice suffered by the defendant. *Id.* at ¶¶ 13–16 (discussing *State v. Skorick*, 2002 ND 190, ¶¶ 14–17, 653 N.W.2d 698; *State v. Marks*, 452 N.W.2d 298, 299 (N.D.1990)). "We presume the jury follows the judge's instructions." *Skorick*, at ¶ 17.

[¶ 28] In its closing argument, the State said, "At the beginning the Judge told you all the essential elements the State has to prove in order for you to find the defendant guilty." The State also commented, "I'm asking you to hold him responsible for that." Moran discussed the State's burden of proof at length. The judge instructed the jury that the State had to prove all offense elements beyond a reasonable doubt, what a reasonable doubt was, and that arguments made by trial counsel are not evidence. This Court is allowed to presume that the jury followed those instructions. The State never referenced a lesser burden of proof, so it did not err. The State has no duty to reiterate the court's properly instructed burden of proof. Furthermore, the State's remarks about holding Moran responsible for his actions did not reference Moran's

1. *See Catch Me If You Can* (DreamWorks SKG 2002).

FRANK ABAGNALE, JR.: Stop chasing me!
CARL HANRATTY: I can't stop, it's my job.

plea of not guilty or the fact that he did not testify. *See United States v. Smith,* 934 F.2d 270, 275 (11th Cir.1991) (the prosecution's statement that the defendant " 'has not taken responsibility for his actions' because he refused to plead guilty, whereas his co-defendants entered guilty pleas" was harmless error because the court provided a curative instruction explaining the statement was improper). Therefore, the State did not err. The statements did not prejudice Moran because the State's comments simply asked the jury to reach a conclusion based on the State's theory of the case. The State committed no error by not restating its burden of proof beyond a reasonable doubt or by asking the jury to hold Moran responsible for his actions.

## IV

[¶ 29]   The judgment of the district court is affirmed.

[¶ 30] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.