# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 52

State of North Dakota,                                  Plaintiff and Appellee

v.

Jordan Lee Borland,                                  Defendant and Appellant

### No. 20200053

Appeal from the District Court of Nelson County, Northeast Central Judicial District, the Honorable M. Jason McCarthy, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Quentin B. Wenzel (argued), Assistant State's Attorney, Langdon, ND, and Jayme J. Tenneson (on brief), State's Attorney, Lakota, ND, for plaintiff and appellee.

Jessica J. Ahrendt, Grand Forks, ND, for defendant and appellant.

# State v. Borland
## No. 20200053

**Jensen, Chief Justice.**

[¶1]   Jordan Borland appeals from a criminal judgment entered after a jury found him guilty of criminal vehicular homicide at the conclusion of a third jury trial on the charge. Borland argues double jeopardy barred his retrial; the district court erred by denying his requested jury instruction and special verdict form seeking a jury finding on double jeopardy; and he was denied the right to a speedy trial. We affirm.

I

[¶2]   The State charged Borland with the offense of criminal vehicular homicide on October 17, 2017. Borland's trial was set to begin July 24, 2018. Two weeks before trial, the State requested additional trial time to present its case in order to accommodate the increased number of potential trial witnesses. Borland did not object to the State's request to extend the length of trial. To accommodate the request for additional trial time, the district court rescheduled the trial to October 2, 2018. The trial was held as scheduled on October 2, 2018, and the jury returned a guilty verdict. Borland filed a motion for a new trial alleging juror misconduct after discovering a juror brought into the jury room an extraneous, unauthorized definition of "reasonable doubt" and shared the definition with other jurors during deliberations. On February 28, 2019, the court granted Borland's motion for a new trial.

[¶3]   A second trial was scheduled for June 3, 2019. Prior to trial, the State filed a motion to continue trial and a motion to change the venue of the trial. Borland objected to the motion for a change of venue but did not object to the motion to continue. The district court granted the motion to continue, denied the motion for a change of venue, and rescheduled the second trial for July 8, 2019. Borland's second trial was held on July 8, 2019, as scheduled. After the case had been submitted to the jury, the jury communicated to the court it was unable to come to a unanimous decision. Borland moved for a mistrial, and his motion was granted on July 16, 2019.

[¶4]   The third trial was scheduled for February 3, 2020. The State filed a motion to continue the trial and a motion to change the venue of the trial. Borland objected to both motions, and the district court denied both motions. On December 27, 2019, Borland filed a motion to dismiss the case in the interest of justice arguing double jeopardy barred retrial and he was denied his right to a speedy trial. The court denied the motion to dismiss. Borland subsequently filed proposed jury instructions including an instruction on double jeopardy and a special verdict form which asked the jury to determine if jeopardy had previously attached. The court denied the proposed instruction and special verdict form. The jury returned a guilty verdict on February 6, 2020. Borland appealed the criminal judgment.

II

[¶5]   Borland argues double jeopardy barred multiple retrials for the same charges. The double jeopardy provisions of the federal and state constitutions and state law prohibit successive prosecutions and punishments for the same criminal offense. U.S. Const. amend. V; N.D. Const. art. I, § 12; N.D.C.C. § 29-01-07. The standard of review for constitutional issues, such as double jeopardy, is de novo. *State v. Peterson*, 2016 ND 192, ¶ 8, 886 N.W.2d 71. "[J]eopardy attaches when the jury is empaneled and sworn." *City of W. Fargo v. Ekstrom*, 2020 ND 37, ¶ 9, 938 N.W.2d 915. "Each case in which a double jeopardy violation is asserted must turn upon its own facts." *Id.*

[¶6]   A defendant waives the constitutional protection against being placed in double jeopardy after a verdict or judgment against them is set aside at their own instance, either by motion in trial court or upon successful appeal. *City of Minot v. Knudson*, 184 N.W.2d 58, 62 (N.D. 1971); *see also Tibbs v. Florida*, 457 U.S. 31, 39-41 (1982) (Double Jeopardy Clause imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting their first conviction set aside, with the exception that no retrial is permissible after a conviction has been reversed because of insufficiency of the evidence.). Double jeopardy does not necessarily bar retrial when the previous trial was terminated before a verdict is rendered. *Ekstrom*, 2020 ND 37, ¶ 9, 938 N.W.2d 915. If a mistrial is made with the defendant's consent, such as when the

2

defendant moves for mistrial without having been goaded into doing so by prosecutorial misconduct, such mistrial does not generally bar a later prosecution. *Id.*

[¶7] Regarding retrials following a mistrial, this Court has determined the double jeopardy standard as stated by the United States Supreme Court in *Oregon v. Kennedy*, 456 U.S. 667 (1982), is the proper standard for North Dakota. *Ekstrom*, 2020 ND 37, ¶ 15, 938 N.W.2d 915. The United States Supreme Court in *Kennedy,* 456 U.S. 667, 675-76 (1982), stated:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, the important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error. Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

(internal citations and quotations omitted). Furthermore, the Court in *Kennedy* held:

> [T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 679.

[¶8] Borland argues double jeopardy barred his retrial for the same offense after the district court granted his motion for a new trial following the first

trial and after the court granted his motion for a mistrial in the second trial. Borland asserts the State took advantage of the repeated trials to enhance the trial strategy by speaking with jurors, obtaining additional evidence, and refining the presentation of evidence. He does not argue the State intentionally provoked him to move for the new trial or the mistrial.

[¶9]   We conclude double jeopardy did not bar retrial following Borland's first and second trials. After the jury reached a guilty verdict in Borland's first trial, the district court granted Borland's motion for a new trial. Because the jury's guilty verdict in the first trial was set aside at Borland's insistence after the discovery of juror misconduct, the State was entitled to retry the case. Further, double jeopardy does not prohibit a retrial of Borland following the second trial because the court granted Borland's motion for mistrial after the jury communicated it could not reach a unanimous verdict. The State did not provoke Borland into requesting the mistrial. Under the *Kennedy* standard adopted by this Court, the district court did not err finding double jeopardy was inapplicable. Having concluded the court did not err in finding double jeopardy to be inapplicable, we also conclude the court did not err by denying Borland's requested jury instruction and special verdict form seeking a jury finding on double jeopardy.

III

[¶10] Borland argues his constitutional right to a speedy trial was violated. The Sixth Amendment to the United States Constitution and article 1, section 12 of the North Dakota Constitution guarantees the right to a speedy trial. This Court has adopted a four-part balancing test from *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to decide speedy trial claims under the state and federal constitutions. *State v. Erickson*, 241 N.W.2d 854, 859 (N.D. 1976). The four-part test includes the following: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of the right to a speedy trial; and (4) the prejudice to the accused. *Id*. No single factor of the test is controlling, and the Court must weigh all factors. *State v. Moran*, 2006 ND 62, ¶ 8, 711 N.W.2d 915. When an appellant raises a speedy trial issue, this Court reviews the district court's findings of fact under a clearly erroneous standard, and this

Court reviews a speedy trial determination de novo. *State v. Wayland*, 2020 ND 106, ¶ 8, 942 N.W.2d 841.

[¶11] Before turning to the *Barker* balancing test, we note Borland's case was tried three times. Borland was charged on October 17, 2017. His first trial began on October 2, 2018. The district court subsequently granted a new trial due to juror misconduct. The second trial began on July 8, 2019, and a mistrial was declared in that trial after the jury was unable to reach a unanimous verdict. The third trial commenced on February 3, 2020, and resulted in a final conviction.

[¶12] This Court must initially consider what effect the multiple trials have on the calculation of the length of the delay. While we have not yet considered the effect of a defendant's right to a speedy trial following retrial, courts in other jurisdictions have addressed speedy trial claims after a retrial. Some jurisdictions have court rules addressing the length of delay for the purpose of a speedy trial determination relative to multiple trials. *See e.g.*, *Burmingham v. State*, 57 S.W.3d 118, 122-23 (Ark. 2001); *State v. Carson*, 912 P.2d 1016, 1020 (Wash. 1996). Some jurisdictions have state statutes addressing the length of delay for the purpose of a speedy trial determination relative to multiple trials. *See, e.g.*, *State v. Dockery*, 729 N.W.2d 320, 323 (Neb. 2007); *State v. White*, 67 P.3d 138, 153-54 (Kan. 2003); *Mason v. People*, 932 P.2d 1377, 1381 (Colo. 1997). Some jurisdictions have relied on the American Bar Association for guidance. *State v. Strong*, 851 P.2d 415, 416 (Mont. 1993); *Pernell v. State*, 475 S.W.2d 204, 206 (Tenn. Crim. App. 1971).

[¶13] The North Dakota Rules of Criminal Procedure do not speak directly to the effect to a defendant's right to a speedy trial in light of a mistrial or a granted motion for new trial, the legislature has not provided statutory guidance regarding this issue, and this Court has not yet considered the issue. Because the four-factor *Barker* analysis allows for full consideration of intervening retrials under the second factor, "reason for delay," we will measure the period of delay from the time the State charged Borland to the time of his final trial. *See Goncalves v. Com.*, 404 S.W.3d 180, 199-200 (Ky. 2013).

5

## A

[¶14] The length of delay is a triggering factor to initiate a speedy trial analysis. *Moran*, 2006 ND 62, ¶ 9. Typically, the length of delay is measured by the time between the earlier of the arrest or the charge and the time the trial begins. *See State v. Buchholz*, 2004 ND 77, ¶ 20, 678 N.W.2d 144 (right to speedy trial does not attach until defendant has been accused by either a formal indictment or information or else actual restraints imposed by arrest and holding to answer a criminal charge). Generally, a post accusation delay of "one year or more is 'presumptively prejudicial,' which triggers an analysis of the other speedy trial factors." *State v. Hall*, 2017 ND 124, ¶ 11, 894 N.W.2d 836 (quoting *Moran*, at ¶ 9).

[¶15] Borland was charged with criminal vehicular homicide on October 17, 2017. The trial which resulted in a conviction commenced on February 3, 2020. Because this Court generally considers delays over one year to be presumptively prejudicial, we conclude the period between the State's charge against Borland and third trial is presumptively prejudicial.

## B

[¶16] The second factor for a speedy trial analysis is the reason for delay. *Moran*, 2006 ND 62, ¶ 10. The Court assigns different weights to different reasons for delay. *Barker*, 407 U.S. at 531. This "reason for delay" factor is closely related to the fourth factor, "prejudice to the accused." *Koenig v. State*, 2018 ND 59, ¶ 22, 907 N.W.2d 344. If the State deliberately attempts to delay trial in order to hamper the defense, this reason weighs heavily against the State. *Moran*, at ¶ 10. If the State is negligent by not diligently pursuing the defendant, or the court is overcrowded, this factor weighs less heavily against the State. *Barker*, at 531. When the defendant causes the delay, this factor weighs against the defendant. *Koenig,* at ¶ 22. A valid reason for delay, such as a missing witness, will not be weighed against the State because valid reasons for delay are appropriately justified. *Barker*, at 531.

[¶17] The first notable delay occurred at the scheduling conference two weeks before Borland's first trial. At the scheduling conference, the State requested

6

additional trial time to accommodate the increased number of potential trial witnesses. To accommodate the increased number of witnesses, the district court determined it was necessary to reschedule the trial. Borland did not object to the continuance, and the court rescheduled the trial from July 24, 2018, to October 2, 2018. Another delay occurred before the second trial when the State moved to continue the trial without providing a justification for the request. Borland did not object to the State's motion to continue. The motion to continue was granted by the court, and the trial was rescheduled from June 3, 2019 to July 8, 2019.

[¶18] The overarching reasons for the delay between the charge and the trial that produced a conviction on appeal were the granting of Borland's request for a new trial after the first trial and conviction, and the granting mistrial in the second trial. Borland's first trial began on October 2, 2018, and the jury returned a guilty verdict. Borland subsequently moved for a new trial based on juror misconduct. The district court granted the motion. Borland's second trial began on July 8, 2019. A mistrial was declared as a result of the jury's inability to reach a unanimous decision. The court scheduled Borland's third trial to February 3, 2020, and the trial commenced on that date.

[¶19] In this case, there were valid reasons for the delay between Borland being charged and the final trial. The State is not responsible for the juror misconduct during the first trial or the jury's inability to reach a verdict during the second trial. Additionally, the delays that were caused by the State's requests for a continuance and additional trial time carry no indication of an intentional or negligent delay on behalf of the State. The State fulfilled its obligation to pursue the charge and present the case to a jury on three separate occasions. Therefore, the reason for the delay does not weigh against the State.

C

[¶20] The third factor in a speedy trial analysis is whether the defendant asserted their right to a speedy trial in due course. *City of Grand Forks v. Gale*, 2016 ND 58, ¶ 17, 876 N.W.2d 701. "A failure to timely assert the right to a speedy trial weighs against establishing a speedy trial violation has occurred." *State v. Fischer*, 2008 ND 32, ¶ 32, 744 N.W.2d 760. Borland did not assert his

right to a speedy trial in 2017 when he was first charged. The first time Borland raised the right to a speedy trial was in his motion to dismiss filed on December 27, 2019. Borland's motion was brought less than two months before the third trial was scheduled to begin, and there were no delays subsequent to his motion. Because the third trial was held almost immediately following Borland's eventual assertion of his right to a speedy trial, we conclude this factor does not weigh in favor of finding a speedy trial violation.

D

[¶21] The final factor we must consider is whether there was any prejudice to the defendant as the result of a delay. *Moran*, 2006 ND 62, ¶ 17. The prejudice factor must be analyzed in light of the interests of defendant which the speedy trial was meant to protect, including: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The last interest is most important to the prejudice analysis. *Id*. We examine the interests in light of the specific facts and circumstances of each case. *See id*. at 522.

[¶22] When analyzing impairment to the accused's defense, this Court must consider the burden of establishing prejudice. *Gale*, 2016 ND 58, ¶¶ 20-21, 876 N.W.2d 701. This Court has determined the burden to establish prejudice under this factor turns on whether the government was diligent, negligent, or acting in bad faith in its prosecution:

> If the [government] was diligent in its prosecution, [the defendant] must show actual prejudice. If the government delayed prosecution in bad faith, prejudice is presumed. If the government was negligent in its prosecution, the weight of the evidence controls whether the prejudice must be actual or presumed.

*Id*. at ¶ 21. "Proving actual prejudice requires a defendant to factually link his loss of liberty with any specific prejudice to his right to a fair trial." *Koenig*, 2018 ND 59, ¶ 22, 907 N.W.2d 344.

8

[¶23] There is no evidence the State intentionally or negligently delayed the proceedings. In the absence of the State intentionally or negligently delaying the proceedings, Borland is required to show actual prejudice to his right to a fair trial.

[¶24] Our first consideration in determining whether Borland has demonstrated actual prejudice is whether Borland was subject to oppressive pretrial incarceration. Borland was not incarcerated prior to his sentencing on February 7, 2020. Absent pretrial incarceration, the first interest is irrelevant to our analysis. *See Moran*, 2006 ND 62, ¶ 17.

[¶25] Our second consideration is the minimization of anxiety and the concern of the accused. Borland argues only generalized and hypothetical reasons any defendant may experience anxiety or concern while awaiting trial. We conclude his generalized and hypothetical reasons are insufficient to support his claim of actual prejudice.

[¶26] Our third consideration is the limitation of the possibility that the defense will be impaired. Borland argues his defense was impaired because witnesses could have been subjected to pressure by other community members, may have changed their perception over time, or their memories may have faded. He also argues evidence contained in the vehicle at issue could have deteriorated because the vehicle was stored outdoors. Borland has not directed this Court's attention to any changes or inconsistencies in witness testimony over the course of his three trials. Although he argues evidence may have degraded as the result of the vehicle being stored outside, Borland does not claim he was unable to collect evidence from the vehicle or that any particular evidence was unrecoverable as a result of how the vehicle was stored. Borland has failed to articulate a factual link between his loss of liberty and any specific prejudice caused by the length of time between the charges and the third trial.

E

[¶27] The two-year period from Borland's charge of criminal vehicular homicide to the third trial was presumptively prejudicial. While the State moved to continue the trial on multiple occasions, there is no demonstration

9

the motions were made negligently or in bad faith. The most significant delays resulted from Borland's successful motion for a new trial after the conviction following his first trial and motion for mistrial after submission of the case to the jury during the second trial. The State did not attempt to deliberately delay trial, but rather brought the case to a jury three times in two years and three months. Borland did not assert his right to a speedy trial early in the proceedings and first made the assertion two months before the third trial was set to proceed. Additionally, Borland has failed to establish any actual prejudice by the delay. When balancing the *Barker* factors, Borland was not denied his right to a speedy trial.

## IV

[¶28] We conclude Borland's retrials were not prohibited under double jeopardy, the district court did not err by denying Borland's requested jury instruction and special verdict form seeking a jury finding on double jeopardy and Borland was not denied the right to a speedy trial. We affirm the judgment.

[¶29] Jon J. Jensen, C.J.
 Daniel J. Crothers
 Lisa Fair McEvers
 Jerod E. Tufte

 I concur in the result.

 Gerald W. VandeWalle

10